IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Clarksburg Division

MARY BETH CARDER,

    Plaintiff,

v.       Civil Action No. 1:22-CV-6 (Keeley)

NEWREZ, LLC d/b/a SHELLPOINT
MORTGAGE SERVICING,

    Defendant.

ELECTRONICALLY FILED
01/14/2022
U.S. DISTRICT COURT
Northern District of WV

## COMPLAINT

Plaintiff Mary Beth Carder, by counsel, files this Complaint against Defendant NewRez, LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"). In support of her claims, Ms Carder:

## PRELIMINARY STATEMENT

1. This is an action for statutory, actual, and punitive damages; costs; and attorney's fees brought under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq*.

2. Congress enacted the FCRA to require that a consumer's credit "information [is reported] in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681. To achieve this purpose, the statute contains requirements and obligations that furnishers of credit information must follow when consumers dispute information in their credit reports. 15 U.S.C. § 1681s-2(b).

3. When a consumer, like Ms. Carder, disputes the accuracy of her credit information through the consumer-reporting agencies, those disputes are transmitted to the party furnishing the information, here Shellpoint, which must then conduct what the Fourth Circuit has defined as a

"detailed inquiry or systematic examination." *Johnson v. MBNA Am. Bank, NA*, 357 F.3d 426, 430 (4th Cir. 2004).

4. In this case, Shellpoint inaccurately reported that Ms. Carder was legally obligated to pay her mortgage loan, despite the fact that the mortgage had been discharged through a Chapter 7 bankruptcy more than two decades earlier. Shellpoint furnished this inaccurate and derogatory payment information about Ms. Carder's mortgage to Trans Union, Equifax, and Experian.

5. After Ms. Carder disputed the inaccurate information with Equifax, Experian and Trans Union, Shellpoint failed to fully and properly investigate her disputes and to review all relevant information provided by the consumer reporting agencies in violation of the FCRA, 15 U.S.C. § 1681s-2(b)(1).

## JURISDICTION AND VENUE

6. This Court has jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 168lp.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Ms. Carder's claims occurred in this District and Division.

## PARTIES

8. Ms. Carder is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c).

9. Shellpoint is a mortgage servicing company registered to do business in West Virginia with a principal place of business located at 1100 Virginia Drive, Suite 125, Fort Washington, PA, 19034. It is a furnisher governed by the FCRA.

## FACTS

### *Ms. Carder's Mortgage is Discharged*

10. In June 1995, Ms. Carder purchased her family home using a home mortgage loan from Green Tree Financial Servicing Corporation.

11.     In early 2000, Ms. Carder filed for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Northern District of West Virginia, Bankruptcy Petition No. 1:00-bk-10437.

12.     Ms. Carder included her home mortgage loan in her bankruptcy filings.

13.     On June 21, 2000, the Bankruptcy Court entered an order, "Discharge of Debtor" that discharged Ms. Carder's legal liability on the home mortgage loan and her other debt obligations.

14.     Accordingly, Ms. Carder's home mortgage loan debt obligations were discharged in the bankruptcy proceeding.

15.     Upon information and belief, Shellpoint began servicing Ms. Carder's home mortgage loan after Green Tree's successor, Ditech, filed bankruptcy in 2019.

*Inaccurate Credit Reporting*

16.     In December 2020, Ms. Carder reviewed her credit reports and noticed that her mortgage account was reporting incorrectly.

17.     For example, the mortgage tradeline did not reference that it had been included in bankruptcy.

18.     In addition, the mortgage was reporting with a status of "over 120 days past due," with a $6,821 past due balance and a total balance of $20,912.

19.     This information was incorrect. Ms. Carder was not past due on her mortgage and she did not have an outstanding balance because the debt had been discharged in bankruptcy more than two decades earlier.

20.     On December 23, 2020, Ms. Carder mailed dispute letters to Equifax, Experian, and Trans Union disputing the incorrect information about her mortgage.

21. These letters explained that her mortgage had been discharged in bankruptcy. She included a copy of the bankruptcy docket, along her with bankruptcy petition number.

22. Upon information and belief, each of the consumer-reporting agencies forwarded Ms. Carder's disputes to Shellpoint.

23. In response to Ms. Carder's disputes, Shellpoint failed to conduct an adequate and substantive investigation.

24. Instead, after merely looking at the account notes in its system, Shellpoint verified the inaccurate payment history and forwarded that information to each of the consumer-reporting agencies.

25. This information was still incorrect because Ms. Carder didn't owe any money on her mortgage because it was discharged in her bankruptcy.

26. Therefore, Ms. Carder mailed a follow-up dispute letter to Equifax, Experian, and Trans Union in March 2021.

27. Ms. Carder's dispute letter again explained that her mortgage had been discharged and that the mortgage should not be reporting as past due or with an outstanding balance. She included a copy of her bankruptcy petition and discharge.

28. Upon information and belief, each of the consumer-reporting agencies forwarded Ms. Carder's disputes to Shellpoint.

29. In response to Ms. Carder's disputes, Shellpoint again failed to conduct an adequate and substantive investigation, and the inaccurate information remained on Ms. Carder's credit reports.

30. As a result of the Defendants' conduct, Ms. Carder suffered significant actual damages, including credit denials, a decreased credit score, reputational damage, embarrassment, humiliation, and other emotional distress.

31. Shellpoint's processing of consumer disputes was willful and carried out in reckless disregard for consumers' rights under the FCRA. For example, Shellpoint's conduct was willful because it was intentionally accomplished through intended procedures that prioritize efficiency over accuracy.

### COUNT ONE:
### VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(A)
### (SHELLPOINT)

32. Ms. Carder incorporates the allegations set forth above.

33. On one or more occasion within the past two years, Shellpoint violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly investigate Ms. Carder's disputes.

34. When Ms. Carder disputed her account with the consumer-reporting agencies, Shellpoint used a dispute system named "e-Oscar," which the consumer-reporting agencies and their furnisher-customers, like Shellpoint, have adopted to process consumer disputes. E-Oscar is an automated system, and its use by the consumer-reporting agencies is systemic and uniform.

35. When the consumer-reporting agencies receive consumer disputes, they (usually via an outsourced vendor) translate each dispute into an automated consumer dispute verification ("ACDV") form.

36. Upon information and belief, the ACDV form is the method that Shellpoint has elected to use to receive consumer disputes under 15 U.S.C. § 1681i(a).

37. Upon information and belief, Ms. Carder alleges that the consumer-reporting agencies forwarded her dispute to Shellpoint using an ACDV form.

38. Shellpoint understood the nature of Ms. Carder's disputes when it received the ACDV form.

39. Upon information and belief, when Shellpoint received the ACDV form containing Ms. Carder's disputes, Shellpoint followed a standard and systemically unlawful process in which it only reviewed its own internal computer screen for the account and repeated back the same information to the ACDV system that was previously reported to the consumer-reporting agency.

40. Upon information and belief, in accordance with its standard procedures, Shellpoint does not conduct any substantive review to determine if the information in its system is accurate when it receives a consumer dispute through e-Oscar.

41. Because of Shellpoint's violations of 15 U.S.C. § 1681s-2(b)(1)(A), Ms. Carder suffered actual damages, including credit denials, a decreased credit score, damage to reputation, embarrassment, humiliation, and other emotional distress.

42. Shellpoint's violations of § 1681s-2(b)(1)(A) were willful, rendering it liable to Ms. Carder for damages under 15 U.S.C. § 1681n.

43. In the alternative, Shellpoint was negligent, entitling Ms. Carder to damages under 15 U.S.C. §1681o.

### COUNT TWO:
### VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(B)
### (SHELLPOINT)

44. Ms. Carder incorporates the allegations set forth above.

45. On one or more occasions within the past two years, Shellpoint violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant information provided by the consumer-reporting agencies.

46. As Ms. Carder detailed in the previous Count, Shellpoint has elected to use the e-Oscar system to receive FCRA disputes from the consumer-reporting agencies.

47. When it received the ACDV forms from the credit-reporting agencies, Shellpoint did not review any of the documentation that Ms. Carder attached to her dispute, which demonstrated that her mortgage was discharged in her bankruptcy.

48. If Shellpoint had reviewed these documents, which included her bankruptcy petition and discharge, then it would have known that its previous reporting was incorrect and needed to be updated.

49. Shellpoint also failed to consider the other information that the consumer-reporting agencies provided regarding Ms. Carder's disputes, including the two-digit dispute code that the agencies listed on the ACDV form.

50. Shellpoint knew the meaning of the dispute codes used by the consumer-reporting agencies in e-Oscar.

51. Shellpoint does not contend that the ACDV system is an inadequate means to receive FCRA disputes from the consumer-reporting agencies.

52. Shellpoint understood Ms. Carder's disputes and that she claimed that her mortgage was reporting incorrectly because of the bankruptcy discharge.

53. Despite this, Shellpoint did not update its incorrect reporting regarding Ms. Carder's account.

54. Because of Shellpoint's violations of 15 U.S.C. § 1681s-2(b)(1)(B), Ms. Carder suffered actual damages, including credit denials, a decreased credit score, damage to reputation, embarrassment, humiliation, and other emotional distress.

55. Shellpoint's violations of 15 U.S.C. § 1681s-2(b)(1)(B) were willful, rendering it liable for damages under 15 U.S.C. § 1681n.

56. In the alternative, Shellpoint was negligent, entitling Ms. Carder to recover damages under 15 U.S.C. § 1681o.

## COUNT THREE:
## VIOLATION OF FCRA, 15 U.S.C. § 1681s-2(b)(1)(C) and (D)
## (SHELLPOINT)

57. Ms. Carder incorporates the allegations set forth above.

58. On one or more occasions within the past two years, Shellpoint violated 15 U.S.C. § 1681s-2(b)(1)(C) and (D) by publishing its representations within Ms. Carder's credit files without also including a notation that her account was disputed and by failing to correctly report results of an accurate investigation to each credit reporting agency.

59. Specifically, Shellpoint failed to add the "XB" or "XC" code to the CCC (Compliance Condition Code) field in the ACDV dispute forms when it responded to the credit reporting agencies, which would have indicated that the account was disputed.

60. Upon information and belief, Ms. Carder alleges that Shellpoint rarely, if ever, added the XB or XC code or other notation that an account was disputed when it responded to ACDV forms.

61. Furthermore, Shellpoint knew that Ms. Carder disputed the subject account through her dispute letters to the credit reporting agencies.

62. Ms. Carder's disputes were bona fide as her mortgage was discharged and did not have an outstanding balance or any past due payments.

63. As a result of Shellpoint's violations of 15 U.S.C. § 1681s-2(b)(1)(C) and (D), Ms. Carder suffered actual damages, including credit denials, a decreased credit score, damage to reputation, embarrassment, humiliation, and other emotional distress.

64. Shellpoint's violations of 15 U.S.C. § 1681s-2(b)(1)(C) and (D) were willful, rendering it liable for damages under 15 U.S.C. § 1681n.

65. In the alternative, Shellpoint was negligent, entitling Ms. Carder to recover damages under 15 U.S.C. § 1681o.

WHEREFORE, Ms. Carder demands judgment for actual, statutory, and punitive damages against Shellpoint as pleaded above; her attorney's fees and costs; prejudgment and post-judgment interest at the judgment rate; and such other relief the Court finds appropriate.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**MARY BETH CARDER**

By: _/s/ Michael Nissim-Sabat_
Digitally signed by Michael Nissim-Sabat
Date: 2022.01.14 16:03:42 -05'00'

Michael C. Nissim-Sabat (WV State Bar No. 12233)
Mountain State Justice, Inc.
1029 University Ave., Suite 101
Morgantown, WV 26505
Telephone: (304) 326-0188
Facsimile: (304) 326-0189
Email: michael@msjlaw.org

Bren J. Pomponio (WV State Bar No. 7774)
Mountain State Justice, Inc.
1217 Quarrier Street
Charleston WV 25301
Phone: 304.344.3144
Fax: 304.344.3145
Email: bren@msjlaw.org

*Counsel for Plaintiff*

9